United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CYNTHIA VENEGAS, et al.,
Plaintiffs,
v.
COUNTY OF MONTEREY, et al.,
Defendants.

Case No. 25-cv-11072-PCP

**ORDER DENYING MOTION TO DISMISS**

Re: Dkt. No. 37

Plaintiffs are the surviving mother and minor children of Elisa Marie Sanchez, who was found unresponsive and later declared dead during her incarceration at Monterey County Jail in January 2025. Plaintiffs bring federal and California state causes of action against various county officials including, as relevant here, the medical entity and professionals in charge of Sanchez's medical and mental health care while she was detained in Monterey County Jail. California Forensic Medical Group (CFMG), licensed therapist Matthew Zeledon, registered nurse Joseph Villegas, and social worker Tessa Wise now move to dismiss plaintiffs' claims against them for failure to state a claim.[1] For the reasons stated below, the Court denies the motion.

**BACKGROUND**

Elisa Marie Sanchez was held at Monterey County Jail from January 6, 2025, until her death from an accidental fentanyl overdose in the early morning of January 16, 2025.[2] Sanchez was found unresponsive in her cell with a bag of fentanyl powder later found inside her body. Complaint ¶ 73.

---

[1] The County defendants—the County of Monterey, Sheriff Tina Nieto, Timonthy Lanquist, Eric Bixler, Brandon Smith, Aaron Acosta, and Sonya Gutierrez—have filed an answer to plaintiffs' complaint. Dkt. No. 40.

[2] For the purposes of defendants' motion to dismiss, the Court accepts the truth of the facts alleged in plaintiffs' complaint.

CFMG is Monterey County Jail's healthcare provider. Complaint ¶ 20. Matthew Zeledon is a licensed therapist and employee of CFMG and the County who was responsible for Sanchez's mental health treatment. Complaint ¶ 21. Joseph Villegas is a registered nurse and employee of CFMG and the County who was responsible for Sanchez's treatment. Complaint ¶ 22. Tessa Wise is a social worker and employee of CFMG and the County who was also responsible for Sanchez's mental health treatment. Complaint ¶ 23.

Plaintiffs also sue 20 unnamed Doe defendants. Defendant Doe 1 is CFMG's chief clinical officer. Complaint ¶ 24. Defendant Doe 2 is the supervisor of CFMG's mental health services. Complaint ¶ 25. Eighteen other Does—Does 3 through 20—were allegedly agents of Monterey who were deliberately indifferent to Sanchez's needs. Complaint ¶¶ 27, 28.

On January 6, 2025, Sanchez entered Monterey County Jail. Complaint ¶ 67. At an initial intake screening, defendants learned of Sanchez's substance addiction and mental health history, including bipolar disorder, schizophrenia, and generalized anxiety disorder. Complaint ¶ 67. Though Sanchez received that intake screening, plaintiffs allege that she did not subsequently receive adequate mental health treatment. Complaint ¶¶ 67, 68.

On January 14, 2025, Zeledon, a licensed therapist, evaluated Sanchez in a telehealth appointment, at which point he found her to be "suffering from hallucinations, hearing the voices of screaming children being raped, identifying herself as a soldier of God, pressured rapid speech, delusional ideas, and religious preoccupation that she would miss her opportunities she gets from using drugs if she had a 9 to 5." Complaint ¶ 21; *see also id.* ¶ 68. Plaintiffs allege that Zeledon, despite noting Sanchez's symptoms, "did not escalate to a medical provider, and he did not provide any treatment for her drug seeking behavior." Complaint ¶ 68. Also on January 14, 2025, defendants became aware of three other instances of drug use at Monterey County Jail, including an overdose, but did not perform adequate searches or screens to prevent drugs from entering the jail. Complaint ¶ 69.

At some point between January 14 and January 15, plaintiffs allege that Sanchez "received illegal drugs from a female inmate who had brought illegal drugs into the jail," used the drugs, and hid them in her body. Complaint ¶ 70. The day before Sanchez's death, on January 15, 2026,

Villegas assessed Sanchez but did not note the symptoms Zeledon observed the previous day; Villegas gave Sanchez a normal assessment. Complaint ¶ 22. Wise also assessed Sanchez's mental health and gave a normal assessment. Complaint ¶ 23.

On January 16, 2025, at 2:26 a.m., Gutierrez performed a safety check on Sanchez and found her unresponsive. Complaint ¶ 72. Gutierrez shined a light on Sanchez and confirmed verbally and visually that Sanchez was alive, but plaintiffs allege that her condition had "deteriorated significantly due to her mental health and drug ingestion." Complaint ¶ 72. Gutierrez did not call for medical or mental health care. Complaint ¶ 72. At 3:43 a.m., Acosta checked on Sanchez.[3] Complaint ¶ 73. Acosta saw that "Sanchez [was] lying face down on the floor of her cell with her hands positioned between her upper body and the floor." Complaint ¶ 73.

At 4:10 a.m., Acosta checked on Sanchez again and "again observed Ms. Sanchez lying face down on the floor of her cell" and "continued to have no signs of life." Complaint ¶ 74. This time Acosta entered Sanchez's cell and found that she was "pale and cold to the touch" and "unresponsive." Complaint ¶ 74. Sanchez received multiple unsuccessful doses of Narcan and CPR. Complaint ¶ 74.

Plaintiffs are Sanchez's mother, Cynthia Venegas, who is also Sanchez's successor in interest, and Sanchez's minor children C.G. and A.G. Complaint ¶ 3. They allege that defendants failed to provide adequate mental health care. Complaint ¶ 75. They also allege that defendants failed to have adequate screening procedures in place to keep drugs away from inmates. And they allege that defendants failed to perform sufficient safety checks as required by their own policies. Complaint ¶ 75.

Plaintiffs plead eight federal and California causes of action:

- Claim 1 (federal): Deliberate indifference to Sanchez's medical and mental health needs in violation of 42 U.S.C. § 1983 against all defendants. Complaint ¶¶ 76-91.
- Claim 2 (federal): failure to protect in violation of 42 U.S.C. § 1983 against all

---

[3] Plaintiffs allege that no check was performed between Gutierrez's 2:26 a.m. check and Acosta's 3:43 a.m. check, which meant that at least two checks were missed because checks were required at least every 30 minutes. Complaint ¶ 73.

defendants. Complaint ¶¶ 92 106.

- Claim 3 (federal): loss of parent/child relationship in violation of substantive due process and 42 U.S.C. § 1983 against all defendants. Complaint ¶¶ 107-111.
- Claim 4 (California): Medical malpractice against CFMG, Zeledon, Villegas, Wise, and Does.
- Claim 5 (California): failure to furnish medical care against the County defendants. Complaint ¶¶ 119-127.
- Claim 6 (California): negligent supervision against the County defendants and CFMG. Complaint ¶¶ 128-135.
- Claim 7 (California): wrongful death against all defendants. Complaint ¶¶ 136-143.
- Claim 8 (California): negligence against the County defendants. Complaint ¶¶ 144-152.

Plaintiffs seek punitive and compensatory damages, funeral and burial expenses, interest, costs, restitution, and all other just and proper relief. Complaint at 35.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Dismissal is required if the plaintiff fails to allege facts allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the nonmoving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct

unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## ANALYSIS

CFMG, Zeledon, Villegas, and Wise move to dismiss all claims against them: Claim 1, Claim 2, Claim 3, Claim 4, Claim 6, and Claim 7.

### I. Claim 1: Deliberate Indifference

Defendants move to dismiss the deliberate indifference claim against individual defendants Zeledon, Villegas, and Wise for failure to state a claim and move to dismiss the claim against CFMG for failure to plead municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

#### A. Plaintiffs state a claim against the individual defendants.

"[T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018) (cleaned up). The Ninth Circuit has emphasized that element (iii) is an objective inquiry. *See id.* at 1123–1125; *id.* at 1124 (extending to medical care claims the objective deliberate indifference standard articulated in *Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015)).

Plaintiffs have stated a claim for deliberate indifference. Sanchez struggled with "bipolar disorder, schizophrenia, and generalized anxiety disorder" and reported hallucinations, disordered speech, and "that a 9-to-5 job would interfere with her opportunities she gets from using drugs." Complaint ¶¶ 67, 68. In response, plaintiffs allege, each of the individual medical defendants

failed to provide Sanchez with *any* treatment. On January 14, 2025, Zeledon evaluated Sanchez and "found her to be suffering from hallucinations, hearing voices of screaming children being raped, identifying herself as a soldier of God, pressured rapid speech, delusional ideas, religious preoccupation and that she would miss her opportunities she gets from using drugs if she had a 9 to 5 [job]." Complaint ¶¶ 21, 68. Yet Zeledon did not provide Sanchez "any treatment for her drug seeking behavior." Complaint ¶ 68. Zeledon's failure to provide *any* treatment in the face of acute symptoms of delusions and distress plausibly supports an inference that Zeledon acted with objective deliberate indifference to Sanchez's medical needs.

Plaintiffs also plausibly allege Villegas and Wise exhibited objective deliberate indifference. The day immediately following Zeledon's assessment, Villegas assessed Sanchez and "found Ms. Sanchez on all accounts to have a normal assessment" and "failed to note any concerning signs or symptoms." Complaint ¶ 22. Wise, too, assessed Sanchez on January 15, 2025, and "found Ms. Sanchez on all accounts to have a normal assessment" and "failed to note any concerning signs or symptoms." Complaint ¶ 23. That Sanchez reported incredibly concerning psychological symptoms to Zeledon on January 14 while, on the very next day, neither Villegas nor Wise reported *any* concerning symptoms makes plausible the plaintiffs' claim that Villegas and Wise were objectively deliberately indifferent and supports an inference that they both "missed an obvious and worsening risk and failed to take the reasonably, available measures the objective standard requires." Plaintiff's Response at 5 (citing *Gordon*, 888 F.3d at 1125).

Defendants argue that plaintiffs have not specifically alleged that Zeledon observed "drug-seeking behavior." Motion to Dismiss at 12. But as plaintiffs note, Zeledon observed that Sanchez's symptoms included thinking "that her drug use was directed by God's word and that a 9-to-5 job would interfere with her opportunities she gets from using drugs." Complaint ¶ 68. The Court acknowledges that causation may prove to be a complicated *factual* issue because a substance overdose directly caused Sanchez's death, not her mental illnesses. Nonetheless, at the pleadings stage, plaintiffs allege facts that make plausible an inference that Sanchez's symptoms, viewed objectively, reasonably demanded better monitoring and treatment than she received, and that such a response could have prevented Sanchez's death. The plaintiffs therefore plausibly

allege that defendants were deliberately indifferent to Sanchez's mental health needs.

**B. Plaintiffs state a claim against CFMG under *Monell*.**

To state a 42 U.S.C. § 1983 claim against a local government, a plaintiff must plead that the government had a "deliberate policy, custom, or practice that was the moving force behind the constitutional violation." *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) (quoting *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007)). "Absent a formal governmental policy," plaintiffs "must show a longstanding practice or custom which constitutes the standard operating procedure of the local government entity" and that practice or "custom must be so persistent and widespread that it constitutes a permanent and well settled city policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (cleaned up). Defendants argue that plaintiffs fail to allege a so-called *Monell* claim as to defendant CFMG because plaintiffs do not allege an official policy or that a policy of CFMG's caused Sanchez's death. Motion to Dismiss at 13–15.

In response, plaintiffs point to the well-documented history of mental health problems at Monterey County Jail. Opposition at 6–7. In 2015, Judge Freeman of this court issued a preliminary injunction requiring Monterey County and CFMG to remedy hazards at Monterey County Jail including "cells with hanging points, incomplete intake health screenings, inadequate care scheduling, insufficient interpretation services, and lack in continuity of prescription medications." Complaint ¶ 47. Plaintiffs allege that Monterey Jail's past "systemic failures in providing psychiatric medication caused inmates with mental illness to decompensate, leading to additional harm and suffering." Complaint ¶ 47. In the years since the 2015 preliminary injunction and 2016 implementation plans, Judge Freeman has sanctioned Wellpath (CFMG's parent company) for failing to comply with the implementation plan. *See* ECF No. 5:13-cv-02354-BLF, Dkt. No. 838, at 25 (Sept. 16, 2023) (quoted in Complaint ¶ 52).

Defendants note that the terms of the settlement prohibit its use "against any Defendant in any other litigation that has been or may be filed against any Defendant." Exh. A, Dkt. No. 44-2 ¶ 6. While the Court does not use the *terms* of the prior settlement against CFMG here, the prior litigation and settlement is relevant in considering the plausibility of plaintiffs' *Monell* claim. While CFMG likely does not have a "formal governmental policy" of failing to treat its patients,

plaintiffs have "show[n] a longstanding practice or custom which constitutes the standard operating procedure of the local government entity" and that the custom is "so persistent and widespread that it constitutes a permanent and well settled city policy." *Trevino*, 99 F.3d at 918. Plaintiffs cite defendants' "longstanding failure to provide adequate safety checks at Monterey County Jail," especially insofar as they have a "longstanding history and practice of failing to ensure that safety, health, and welfare checks are adequately and correctly performed by officers at the Jail in order to affect their intended purpose of protecting people incarcerated at the Jail from harm." Complaint ¶¶ 35, 36. The facts here are consistent with the existence of such a longstanding practice: Zeledon, Villegas, and Wise either observed Sanchez's acute symptoms and failed to provide *any* treatment or failed to even observe such symptoms in the first place. The Court thus finds plausible the factual inference that CFMG had both a policy or practice of failing to ensure adequate service to Monterey Jail inmates and that that CFMG's policy or practice had a causal role in Sanchez's death. If CFMG's employees had done a better job of either conducting Sanchez's intake or monitoring her more closely, it is plausible that they could have prevented or mitigated her consumption of fentanyl. Defendants' motion to dismiss plaintiffs' deliberate indifference claim against CFMG on *Monell* grounds is therefore denied.

## II. Claim 2: Failure to Protect from Harm

The parties agree that plaintiffs' failure-to-protect-from-harm claim under the Fourteenth amendment depends on plaintiffs' deliberate indifference claim. MTD at 15–16; Opposition at 7–8. Because plaintiffs state a claim for deliberate indifference, defendants' motion to dismiss their claim for failure to protect from harm similarly fails.

## III. Claim 3: Loss of Parent/Child Relationship

A substantive due process right to familial association claim requires that the defendants have acted with deliberate indifference. Defendants argue that the proper inquiry here is whether defendants "acted with a purpose to harm" Sanchez "that was unrelated to legitimate … objectives." *See Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). But as plaintiffs point out, the Ninth Circuit explained at length in *Porter v. Osborn* that it was applying the "purpose to harm" standard there to "an evolving set of circumstances that took place over a short time period

necessitating fast action and presenting obligations that tend to tug against each other." *Id.* at 1139 (cleaned up). For situations wherein state officers have "opportunity for actual deliberation," such as "Eighth Amendment prison cases," there are more opportunities to act with sufficient care and therefore indifference, as opposed to purpose to harm, may be "truly shocking" and sufficient to support a substantive due process claim. *See id.* (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 853 (1998)).

Here, the events giving rise to plaintiffs' complaint were nowhere near as fast-moving as the car chase in *Porter*. Thus, the deliberate indifference standard applies. Under the deliberate indifference standard, plaintiffs adequately plead that defendants disregarded Sanchez's health risks because they assessed Sanchez during an acute mental health crisis and recommended little treatment, if any.

Defendants also argue that plaintiffs cannot bring a claim for loss of familial association because the decedent was a parent or spouse. Motion to Dismiss at 16–17. Defendants cite two California federal district courts holding that the existence of a familial relationship alone is insufficient to establish an interference-with-familial-association claim: *Estate of Mendez v. City of Ceres*, 390 F. Supp. 3d 1189, 1215 (E.D. Cal. 2019), and *Estate of Chivrell v. City of Arcata*, 623 F. Supp. 3d 1032, 1044 (N.D. Cal. 2022). Motion to Dismiss at 17. But the Supreme Court has strongly suggested that parent-child relationships are protected as a fundamental liberty in the First Amendment context, *see Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987), which both sides in *Chivrell* understood to be coterminous with the Fourteenth Amendment analysis, 623 F. Supp. 3d at 1043 n.6; *see also Est. of Mendez*, 390 F. Supp. at 1215–16. The Supreme Court has explained that "[t]he intimate relationships to which we have accorded constitutional protection include … the begetting and bearing of children…." *Rotary*, 481 U.S. at 545. Here, plaintiffs include Sanchez's minor children and her mother. At the motion to dismiss stage where the Court must draw all reasonable inferences in plaintiffs' favor, their loss of a relationship with Sanchez involved the loss of the type of intimate familial relationship protected by substantive due process.

## IV. Claim 4: Medical Malpractice

Defendants argue that plaintiffs' medical malpractice claim is untimely because they failed to serve a notice of intent at least 90 days before filing their suit as required by California Code of Civil Procedure § 364.

California law provides that the statute of limitations for medical malpractice is one year after the plaintiff discovers or should have discovered the injury. *See* Cal. Code of Civ. Proc. § 340.5. Plaintiffs filed their suit on December 30, 2025, which was within one year of Sanchez's death on January 16, 2025. Dkt. No. 1. Therefore, their suit was timely with respect to the applicable statute of limitations.

California law also requires that a medical-malpractice plaintiff provide the defendant with a notice of intent to sue at least 90 days before filing suit in order to encourage settlement and consequently control insurance premiums. Cal. Code of Civ. Proc. § 364(a); *see Woods v. Young*, 53 Cal. 3d 315, 320 (1991). Crucially, however, California Code of Civil Procedure § 365 provides that "[f]ailure to comply with [the notice requirement] shall not invalidate any proceedings of any court of this state, nor shall it affect the jurisdiction of the court to render a judgment therein." Instead, "failure to comply with such provisions by any attorney at law shall be grounds for professional discipline and the State Bar of California shall investigate and take appropriate action in any such cases brought to its attention." The California Supreme Court has confirmed that "section 365 does not legally prevent a plaintiff from commencing a medical malpractice action during the mandatory 90-day waiting period set forth in section 364(a)." *Woods*, 53 Cal. 3d at 324. Though *Woods* concerned a plaintiff who provided a notice of intent to sue but did not wait the full 90 days before filing suit, the plain text of § 365 provides that "[f]ailing to comply with this chapter shall not invalidate any proceedings of any court of this state." Cal. Code of Civ. Proc. § 365 Defendants' motion to dismiss the medical malpractice claim for failure to comply with the notice requirement is therefore denied.

## V. Claim 6: Negligent Supervision against CFMG

Defendants argue that plaintiffs fail to state a claim for negligent supervision against CFMG because plaintiffs' only allegation is that CFMG failed to properly train employees on how

to address and treat substance abuse. Motion to Dismiss at 19 (quoting Complaint ¶ 131). Defendants argue that plaintiffs' allegation is conclusory and that plaintiffs do not provide a causal link between CFMG's allegedly negligent supervision or training and Sanchez's January 16 death.

Contrary to CFMG's contentions, the factual allegations in plaintiffs' complaint sufficiently plead a claim for negligent supervision. An employer can be liable for the actions of its employee if it knew or should have known that the employee was unfit for their work and the employer's negligence in supervising the unfit employee was a substantial factor in the harm inflicted on the victim. *See Lopez v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 246 Cal. App. 4th 566, 591 (2016); *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co., Inc.*, 5 Cal. 5th 216, 224 n.5 (2018). Further, negligent supervision claims need be pleaded only with enough factual allegations to give the defendant notice of the alleged mistreatment. *See Dwarakanath v. Priyanka*, 832 F. Supp. 3d 968, 977 (N.D. Cal. 2026).

Here, drawing all factual inferences in plaintiffs' favor, plaintiffs have plausibly alleged that CFMG knew that their employees were unfit for work. Plaintiffs have incorporated CFMG's past inadequate supervisory practices at the Monterey County Jail. *See* Complaint ¶¶ 45–66. CFMG's past history and the clear disjunction between Zeledon's observation of acute symptoms of distress one day (accompanied with a failure to suggest any treatment plan) and Villegas's and Wise's utter failure to notice unusual symptoms from Sanchez the next day make plausible the inference that CFMG negligently supervised those individual defendants. And plaintiffs have adequately provided CFMG with notice of the alleged mistreatment: Sanchez's entire course of treatment during her custody in Monterey County Jail. Therefore, defendants' motion to dismiss the negligent supervision claim against CFMG is denied.

## VI. Claim 7: Wrongful Death

The parties agree that a wrongful death claim requires a "wrongful act or neglect" that causes the death of another person. *See* Motion to Dismiss at 20; Response at 10 (citing *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 404 (1999); Cal. Code of Civ. Proc. § 377.60). Defendants argue that plaintiffs cannot state a claim for wrongful death because plaintiffs cannot establish deliberate indifference, medical malpractice, or negligence. Motion to Dismiss at 20–21. Because

United States District Court
Northern District of California

defendants' motion to dismiss is denied as to each of those counts, defendants' motion to dismiss the wrongful-death claim is also denied.

**CONCLUSION**

For the reasons stated above, the Court denies CFMG, Zeledon, Villegas, and Wise's motion to dismiss.

**IT IS SO ORDERED.**

Dated: September 14, 2026

P. Casey Pitts
United States District Judge